706 So.2d 1007 (1998)
David L. HEBERT, Plaintiff-Appellant,
v.
INSURANCE CENTER INCORPORATED, Defendant-Appellee.
No. 97-298.
Court of Appeal of Louisiana, Third Circuit.
January 7, 1998.
*1009 Theodore Glenn Edwards, IV, Lafayette, for David L. Hebert.
Henry Camille Perret, Jr., Lafayette, for Insurance Center Inc.
Before THIBODEAUX, COOKS, WOODARD, SULLIVAN and GREMILLION, JJ.
SULLIVAN, Judge.
This is a suit for the recovery of wages allegedly due plaintiff, David L. Hebert, upon his April 10, 1995 resignation from employment with defendant, Insurance Center Incorporated. Hebert, an insurance sales agent/producer, asserted his entitlement to the balance in his producer's commission account, installment premium commissions collected by the Insurance Center after his resignation for policies that he wrote and placed into effect prior to his resignation, and penalty wages and attorney fees pursuant to La.R.S. 23:632. In its answer, the Insurance Center maintained it was entitled to setoff any amount owed Hebert with uncollectible premiums on his policies which existed at the time of his departure. The Insurance Center also denied that Hebert should receive commissions on installment premiums that it collected after his departure or penalty wages and attorney fees. In its reconventional demand, the Insurance Center alleged that, to the extent the court finds Hebert entitled to receive post-resignation commissions, the Insurance Center should be awarded a fee for servicing the policies after his resignation and the return of commissions from lumpsum premium payments made before Hebert resigned covering policy periods after his resignation.
Trial of this matter was held on August 19, 1996. The next day, the trial court rendered oral reasons for judgment. The trial court determined that Hebert failed to carry his burden of proving his entitlement to commissions on installment premiums that the Insurance Center collected after his resignation. The trial court awarded Hebert three times the amount of his $2,664.21 producer's commission account balance, $7,992.63, as penalty wages for defendant's failure to pay the account balance within seventy-two hours *1010 of Hebert's resignation. The trial court also found in favor of the Insurance Center on its setoff claim in the amount of $3,051.23 and awarded Hebert $2,000.00 in attorney fees. The trial court denied all other requested relief, and signed a judgment in accordance with these reasons on October 22, 1996.
Hebert appealed and the Insurance Center answered his appeal. On appeal, Hebert maintains the trial court erred in the following particulars:
I. Finding that the Insurance Center did not owe Hebert commissions on installment premiums collected after his departure.
II. Finding in favor of the Insurance Center on its setoff claim.
III. Miscalculating penalty wages.
IV. Awarding Hebert inadequate attorney fees.
V. Awarding Hebert only penalty wages instead of actual wages owed plus penalty wages.
In its answer to Hebert's appeal, the Insurance Center contends that the trial court erred in awarding Hebert penalty wages and attorney fees and in awarding the Insurance Center an inadequate amount on its setoff claim.
We reverse the award of penalty wages to Hebert and find that he is entitled to only $2,664.21, the amount in his producer's commissions account on the date of his departure. Additionally, we affirm the trial court's judgment in favor of the Insurance Center for $3,051.23 on its setoff claim for uncollectible premiums. Because our decision recasts the judgment to a $387.02 judgment in favor of the Insurance Center, we reverse the trial court's award of $2,000.00 in attorney fees to Hebert because his suit is not "well-founded" as required by La.R.S. 23:632 for an attorney fees award.

FACTS
The Insurance Center hired Hebert as a producer on March 1, 1988. On the same date, the Insurance Center purchased the "book of business" of Young & Leach Insurance, Incorporated d/b/a Young/Hebert Insurance Agency. Hebert was a 15% co-owner of Young/Hebert Insurance Agency, with Ira Young, who owned the remaining 85%. The parties agreed to a purchase price for the book of business.
As part of the transaction, Hebert signed an employment contract with the Insurance Center that, in paragraph two, provides for a $7,200.00 annual salary plus 45% of the commissions collected on any new business generated by Hebert. The agreement characterized the commission income as "additional payments." Paragraph three of the employment agreement provides that the contract "shall be irrevocable for a period of five (5) years commencing from the date hereof provided..." Paragraph four provides, in pertinent part:
Notwithstanding anything set forth herein to the contrary, in the event that Employee is terminated by Employer for cause, or in the event that Employee voluntarily quits the employ of Employer, then in either of such events Employer shall not be liable unto Employee for any additional payments under this agreement.
Hebert worked for the Insurance Center as a producer from March 1, 1988 to April 10, 1995, when he voluntarily resigned to take a similar position with another insurance agency. He filed the present suit on October 4, 1995.

POST-RESIGNATION COMMISSIONS
At the time of Hebert's resignation, La. R.S. 23:631(A) provided:
Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation.
This section was subsequently amended by Acts 1995 No. 325, § 1, to change the time period within which the employer is required to pay upon an employee's resignation to the next regular payday or fifteen days after resignation, whichever is first. Because Hebert resigned prior to the effective date of *1011 the amendment, the above-quoted former version of the revised statute applies to this case.
Hebert maintained his entitlement to $36,665.82 in commissions for the period from April 1995 to August 1996, the last effective month of policies he wrote before leaving the Insurance Center. The trial court denied Hebert's claim for post-resignation commissions on these installment premium payments made by policyholders for policies Hebert placed into service before his departure. The trial court found that the terms of the employment agreement remained in effect in April 1995, and that paragraph four of the agreement relieved the Insurance Center of any obligation to pay post-resignation commissions to Hebert. The trial court also determined that Hebert failed to prove, as a matter of fact, that he is entitled to post-resignation commissions through his attempt to show that such payments are standard in the insurance industry. Hebert asserts on appeal that the trial court erred in both respects. He also contends that paragraph four of the contract amounts to an illicit forfeiture of wages in violation of La.R.S. 23:634.
A contract has the effect of laws between the parties. La.Civ.Code art.1983. Courts are bound to enforce the contract as written. Bond v. Allemand, 632 So.2d 326 (La.App. 1 Cir.1993), writ denied, 94-718 (La.4/29/94), 637 So.2d 468. If the words of a contract are clear, explicit, and lead to no absurd results, it must be interpreted by reference to the "four corners" of the document and no further interpretation can occur in search of the parties' intent. La.Civ.Code art.2046; Woolf & Magee v. Hughes, 95-863 (La.App. 3 Cir. 12/6/95), 666 So.2d 1128, writ denied, 96-73 (La.3/15/96), 669 So.2d 427. Whether the words of a contract are "clear and explicit" or ambiguous is a question of law. Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 93-2364 (La.App. 4 Cir. 10/2/96), 681 So.2d 1292, writ denied, 96-2625 (La.12/13/96), 692 So.2d 1066. Therefore, the appellate review of such a legal question is constrained to a determination of whether the trial court's interpretation is legally correct or incorrect. Weeks v. T.L. James & Co., Inc., 626 So.2d 420 (La.App. 3 Cir.1993), writ denied, 93-2909 (La.1/28/94), 630 So.2d 794.
We have closely reviewed the language of the employment agreement. We conclude that the trial court correctly interpreted the language of paragraph three, which provides for a five year period of mutual irrevocability. The trial court correctly reasoned that the contract continued to apply to the employment relationship after the five year period, with the relaxed condition that either party could unilaterally end the agreement and employment relationship without consequence. Additionally, the trial court correctly ruled that, under the clear language of paragraph four upon Hebert's resignation, he was not entitled to receive commissions or installment premiums paid to the Insurance Center after his departure. The contract, in paragraph two, clearly labels his commissions as "additional payments," and, in paragraph four, states that upon voluntary resignation, the Insurance Center "shall not be liable" unto Hebert "for any additional payments under this agreement."
At trial, both sides also presented testimony and evidence on custom in the insurance industry. Hebert attempted to prove that, in the insurance industry, a standard practice exists of paying producing agents post-resignation commissions on policies placed into service prior to the agent leaving an agency. Hebert's witnesses generally stated that the vast majority of a producing agent's work (85-90%) involves selling policies, and the remainder of the time is spent servicing accounts. These witnesses opined that the majority of the servicing work is done by customer service representatives. Hebert's position, stated succinctly, is that paragraph four of the employment agreement is a prohibited forfeiture of wages because he actually earned his commission when the policies were placed into service. Contrarily, the Insurance Center's witnesses uniformly stated that producer agents are not paid for post-resignation commissions because their compensation is directly related to both selling and servicing of the accounts. These witnesses stated that producer agents are *1012 not customarily entitled to post-resignation commissions.
La.R.S. 23:634 provides:
No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.
(Emphasis added.)
The trial court determined that, factually, Hebert did not carry his burden of proving that the commissions were actually earned by him upon the date of his resignation. On review, we find that the record contains conflicting testimony and evidence on this issue. We cannot say that the trial court's determination is manifestly erroneous or clearly wrong. Ultimately, given the contradictory nature of the evidence, the trial court's choice of one view of the evidence over another is reasonable in light of the record reviewed as a whole.
Because we affirm the trial court's conclusion that the claimed commissions were not "actually earned" by Hebert at the time of his resignation, we necessarily find that, under these particular circumstances, the language of paragraph four of the employment agreement is not violative of La.R.S. 23:634. The language does not effect a prohibited wage forfeiture in this case.

SETOFF CLAIM
Hebert next maintains the trial court erred in awarding the Insurance Center a $3,051.23 setoff for uncollectible premiums. The Insurance Center asserts that the trial court erred in awarding it an inadequate amount and seeks an additional $2,601.00. This amount represents an unpaid premium on a policy written by Hebert for Ace Secure Technology, Incorporated.
At the commencement of trial, the parties stipulated that the undisputed amount of the Insurance Center's setoff claim is $3,051.23 and the disputed amount is $2,601.00. In speaking about the undisputed $3,051.23 amount to the trial court, plaintiff's counsel said: "Well, I'll be honest with you, Judge. I'm willing for the purposes of this case [to] agree that it can be an offset.... We dispute the other Twenty-six zero-one ($2,601.00)."
The only evidence presented at trial on this issue was the testimony of William Quinlan, president of the Insurance Center. He stated that his agency's practice is to make producing agents financially responsible for unpaid premiums. Mr. Quinlan testified that Hebert's $3,051.23 accounts receivable balance existed before Hebert left the agency. Mr. Quinlan's testimony was not contradicted at trial.
A party that properly pleads setoff as an affirmative defense has the burden of proof of the claim. The defense of setoff requires mutual obligations whereby each obligor owes an equally liquidated and demandable debt to the other. Ducote v. City of Alexandria, 95-1197 (La.App. 3 Cir. 3/6/96), 670 So.2d 1378. Under the circumstances presented, the trial court did not err in awarding the Insurance Center $3,051.23 on its setoff claim. The Insurance Center presented sufficient evidence in support of this portion of its setoff claim, and the parties agreed on the value of the debt. We also conclude that the trial court did not err in denying the Insurance Center its additionally claimed $2,601.00 setoff. The evidence as to whether this claim is liquidated was in conflict, and we find that the trial court's decision is not manifestly erroneous.

PENALTY WAGES
The trial court determined that, as stipulated between the parties, the Insurance Center owed Hebert the $2,664.21 balance in Hebert's producer's commission account as of April 10, 1995. The trial court awarded Hebert three times this amount in penalty wages, $7,992.63. Hebert maintains the trial court erred in awarding only the penalty wages and not actual wages owed plus penalty wages. The Insurance Center, on the other hand, contends that, because Hebert had $3,051.23 in uncollectible premiums on *1013 accounts which more than setoff the balance in his producer's commission account, it acted in good faith in not paying Hebert and should not be liable to him for penalty wages.
La.R.S. 23:632 provides as follows:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
The parties do not dispute that the Insurance Center did not pay Hebert the $2,664.21 in compliance with the provisions of La.R.S. 23:631, which, at the time of Hebert's resignation, required payment within three days. To recover penalty wages, under the language of La.R.S. 23:632, the claimant must merely show that (1) wages were due and owing; (2) demand for payment thereof was made where the employee was customarily paid; and (3) the employer did not pay upon demand. Barrilleaux v. Franklin Found. Hosp., 96-0343 (La.App. 1 Cir. 11/8/96), 683 So.2d 348, writ denied, 96-2885 (La.1/24/97), 686 So.2d 864. However, because the statute is penal and therefore must be strictly construed, the jurisprudence has almost uniformly imposed a requirement that penalties not be imposed on the employer when it presents a good faith, non-arbitrary defense to its liability for unpaid wages. Carriere v. Pee Wee's Equip. Co., 364 So.2d 555 (La.1978); Jones v. Hebert & LeBlanc, Inc., 499 So.2d 1107 (La.App. 3 Cir.1986). This is an equitable defense which is not provided for in the statute. "Where there is a bona fide dispute over the amount of wages due, courts will not consider failure to pay as arbitrary refusal and generally will refuse to award penalties." Barrilleaux, 96-343 at p. 17, 683 So.2d at 360. A trial court's determination concerning whether a defendant employer is in bad faith is a factual question subject to the manifest error/clearly wrong standard of review. Id. at p. 18, 360.
The one exception to the jurisprudential uniformity in application of the employer's equitable defense is this circuit's most recent decision on this issue in the case of Domite v. Imperial Trading Co., 94-16 (La.App. 3 Cir. 8/3/94), 641 So.2d 715. In that case, the trial court interpreted La.R.S. 23:632 as not requiring a showing of bad faith on the part of the employer for the employee to recover penalty wages. This court affirmed. In a scholarly analysis, this court traced the history of the employer's equitable defense to the 1926 case of Deardorf v. Hunter, 160 La. 213, 106 So. 831 (1926), which applied Act 150 of 1920, the predecessor to La.R.S. 23:632. The opinion noted that, since 1926, "Louisiana courts have continuously and without much further legal analysis" allowed the employer to assert the equitable defense. Domite, 94-16 at p. 5, 641 So.2d at 718. The court stated that, since 1926, the statutory language has remained mandatory but that the formerly open-ended term for penalty wages has been restricted to ninety days. The court concluded:
We think that the Deardorf holding and its progeny are no longer applicable in Louisiana. To allow such defenses is contrary to and makes less effective, if not ineffective, the obvious intent of the legislature in adopting this statute.
Id. at p. 6, 641 So.2d at 719 (footnote omitted).
In support of this position, the Domite court cited Carriere, 364 So.2d 555, for its holding that the 1964 amendment to La.R.S. 23:632 overruled pre-1964 case law which had allowed employers to rely on equitable defenses to claims for attorney fees. Finding the mandatory penalty wage provision to be stronger than the language governing attorney fees, this court, by analogy, reasoned that penalty wages, like attorney fees, should "automatically be awarded to the employee *1014 who prevails at trial." Id. at p. 7; 641 So.2d at 719.
The Domite court's application of the attorney fees analysis of Carriere, 364 So.2d 555, to an issue of penalty wages is misplaced. Carriere also involved the question of penalty wages. The supreme court held: "[A] good-faith non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability, still permitted the court to excuse the employer from the imposition of additional penalty wages." Id. at 557 (footnote omitted).
In Carriere, the employer had maintained that the amount it owed plaintiff should be setoff by the value of ten uniforms that the employer alleged plaintiff failed to return. The supreme court affirmed the trial court's finding that the employer successfully presented this equitable defense. The supreme court concluded, therefore, that the plaintiff's claim for penalty wages "was properly rejected." Id.
Although the Domite court's analysis is statutorily correct, we are required to follow the Carriere holding on the penalty wages issue, which approved of the employer's ability to assert equitable defenses.
In the case sub judice, the Insurance Center asserted that it did not pay Hebert the $2,664.21 balance because, at the date of his resignation, he owed the Insurance Center $3,051.23 for uncollectible premiums. The parties agreed to the setoff amount. Mr. Quinlan stated these uncollectible premiums existed before Hebert's resignation and that the premiums were never collected. In Jones, 499 So.2d 1107, a similar factual scenario, this court held that an employer's withholding of the employee's "commissions in an attempt to offset an amount owed by plaintiff for unpaid premiums is a good faith defense." Id. at 1112. Likewise, in the present case, the Insurance Center acted in good faith in withholding from Hebert the balance of his producer's commission account. Practically, the employer should not have to pay the employee all of the wages owed and then later have to demand or even sue for the amount sought to be setoff.
Therefore, we conclude that the trial court manifestly erred in awarding Hebert penalty wages. The amount he is entitled to is reduced to $2,664.21, subject to the Insurance Center's setoff of $3,051.23, for a net judgment in favor of the Insurance Center in the amount of $387.02.

ATTORNEY FEES
The trial court awarded Hebert $2,000.00 in attorney fees, $6,644.22 less than that claimed by his attorney. The trial court stated that the reduced fee was awarded because most of the legal work was performed by Hebert's attorney on the main demand, which he lost. Hebert contends the award is inadequate. The Insurance Center argues that no award of attorney fees is warranted.
The second sentence of La.R.S. 23:632 provides the statutory basis for attorney fees, which are to be taxed as costs to be paid by the employer. Reasonable attorney fees are recoverable if the employee files a "well-founded" suit, even if penalty wages are not owing. Blaney v. Hulsey, Harwood, & Hulsey, 27,983 (La.App. 2 Cir. 2/28/96), 669 So.2d 661. The attorney fees provision is not subject to any equitable defenses that may be raised by the employer. Carriere, 364 So.2d 555; Jones, 499 So.2d 1107; Landry v. Pauli's, Inc., 496 So.2d 431 (La.App. 5 Cir.1986), writ denied, 500 So.2d 428 (La. 1987).
An employee's suit is deemed "well-founded" if he receives a judgment in his favor entitling him to past due wages. Jones, 499 So.2d at 1112. In the present case, because we reverse the trial court's award of penalty wages, we render judgment in favor of the Insurance Center, not Hebert, for $387.02. Under these circumstances, Hebert's suit cannot be considered "well-founded." We therefore reverse the trial court's award of attorney fees.

DECREE
For these reasons, we reverse the trial court's award of penalty wages and attorney fees in favor of Hebert. We render judgment in favor of Hebert for $2,664.21 and *1015 judgment in favor of the Insurance Center on its setoff claim for $3,051.23, resulting in a final net judgment in favor of the Insurance Center of $387.02 plus interest from judicial demand until paid. In all other respects, we affirm.
All costs of this appeal are assigned to plaintiff, David L. Hebert.
AFFIRMED IN PART; REVERSED IN PART.
WOODARD, J., concurs in the result.
THIBODEAUX, J., concurs in part and dissents in part and assigns reasons.
THIBODEAUX, Judge, dissenting in part.
I dissent from the majority's reversal of the trial court's grant of penalty wages and attorney's fees.
Louisiana Revised Statute 23:632 is silent on the question of an equitable defense. An equitable defense is a jurisprudentially-created concept and flies in the face of sound civilian methodology. The position espoused in Domite v. Imperial Trading Company, 94-16 (La.App. 3 Cir. 8/3/94), 641 So.2d 715 is the better position. Our court would be well served by adopting the Domite panel's reasoning.