787 So.2d 1196 (2001)
MARTCO PARTNERSHIP
v.
James L. FRAZIER, Jr.
No. 01-72.
Court of Appeal of Louisiana, Third Circuit.
June 6, 2001.
*1197 John F. Wilkes, III, Karen J. King, Attorneys at Law, Lafayette, LA, Counsel for Plaintiff/Appellee Martco Partnership.
James H. Colvin, Sharp Henry Cerniglia, Colvin Weaver & Hymel, Homer, LA, Counsel for Defendant/Appellant James L. Frazier, Jr.
Court composed of NED E. DOUCET, Jr., Chief Judge, HENRY L. YELVERTON and ELIZABETH A. PICKETT, Judges.
PICKETT, Judge.

FACTS
The defendant, James L. Frazier, Jr., lived in Ruston, La. and worked for Willamette Industries in Arkansas where he drew a salary of approximately $40,000 per year. In May, 1995, he was approached by his boss, Walter Wagner, concerning the possibility of Frazier accepting a position with Martco in Chopin, Louisiana, at a new plywood plant. Wagner was the plant manager at the Willamette plant where Frazier worked and had been contacted by representatives of Martco about running their new plant. They suggested Wagner could assemble his own team to work with him at the Chopin plant. For this purpose, Wagner approached both Frazier and Bo Matthews, another employee at Willamette.
Frazier visited the Martco facility and spoke with Jerry Buckner, vice president of operations for Martco Partnership, and Johnny Martin, president of Roy O. Martin Lumber Companies. He decided to accept the position of dry-end supervisor at an annual salary of $70,000. He was offered a signing bonus of $25,000.
Having accepted the position, Frazier removed his children from a private school in Ruston, gave up the lease on his house, and moved to Alexandria, Louisiana, where he looked for a house and a private school in which to enroll his children. To assist him in obtaining financing for his *1198 home, Buckner gave Frazier a letter of intent which stated Frazier would begin work on June 8, 1995, his annual salary would be $70,000, and he was receiving a signing bonus of $25,000. Roy Martin accompanied Frazier to the bank to help him secure the loan for his home. Frazier intended to use the signing bonus as a down payment on his new home.
When Frazier arrived at work on June 8, 1995, he met with Wagner in Buckner's office. Buckner was not present. Wagner presented Frazier with a document titled "Memorandum of Understanding." Attached to this document was the bonus check for $16,875.00, the amount of the signing bonus less taxes. The memorandum indicated Frazier was an at-will employee, any disputes which arose would be subject to Louisiana law, and if for any reason he were to leave Martco before three years of service, he would have to return a proportionate share of the signing bonus. Frazier signed the memorandum and took the check. He never discussed the memorandum with anyone from Martco other than Wagner.
In January 1997, Buckner approached Frazier about his work, explained they had decided to reassign some of Frazier's responsibilities and advised his pay would be cut by $15,000 per year. Soon after, Frazier was approached by Willamette about returning to work for them. On February 7, 1997, Frazier quit his job at Martco. He went to Johnny Martin's home that evening and advised him he was leaving. Martin told Frazier at that time he would be expected to return a portion of the signing bonus pursuant to the provisions of the Memorandum of Understanding.
On February 17, 1997, Roy Martin sent a letter to Frazier demanding payment of $8,345.09. This amount represented the prorated share of the bonus less credits for wages and vacation time that Martco owed Frazier. Frazier replied on February 17, 1997, demanding payment of his wages and vacation pay. Frazier sent a second letter February 24, 1997, alleging he felt he did not owe the money and that he was forced into signing the Memorandum of Understanding. Another letter was sent by Roy Martin on March 17, 1997, giving Frazier the option of paying the debt over 52 weeks. A demand letter was sent by Martco's attorney May 8, 1997. This suit followed. Frazier filed an answer asserting the affirmative defenses of duress, breach of contract and bad faith. He reconvened against Martco for past due wages, penalties and attorney fees.
Following a bench trial, the trial court ruled in favor of Martco and ordered Frazier to pay the full amount of $8,345.09 plus interest. The court further ruled that Martco's withholding of wages and vacation pay was a permissible set-off since the amounts due Frazier were subject to a real and bonafide dispute, that Martco acted in good faith, and that Frazier owed Martco sums in excess of wages to which he was due. From this judgment, Frazier appeals.

DISCUSSION
Appellant alleges four assignments of error:
1) The trial court erred in finding that Frazier's failure to call Walter Wagner to testify at trial created an adverse presumption.
2) The trial court erred in finding no duress.
3) The trial court erred in finding that Walter Wagner was an agent of James Frazier and not Martco partnership.
4) The trial court erred in finding that Martco's withholding of wages and vacation pay as a set-off was permissible.
*1199 The core issue before the court as to the first three assignments of error is whether the appellant carried his burden of proving economic duress which would vitiate consent to the contractual agreement between the appellant and the appellee set forth in the Memorandum of Understanding.
There are certain findings of fact by the trial court which are clearly supported by the record and not clearly erroneous. We are, therefore, bound by those findings of fact. Rosell v. ESCO, 549 So.2d 840 (La.1989).
These facts are as follows:
Following negotiations, in which Martco used Wagner as its liaison, Frazier was offered a position at Martco's Chopin plant. Frazier was offered the position as dry-end superintendent with an annual salary of $70,000, plus a $25,000 signing bonus, and a production bonus equal to a percentage of company profits. When the appellant reported for work June 8, 1995, he was presented with an employment contract entitled "Memorandum of Understanding" which was attached to his signing bonus check. The appellant signed the document. Only Walter Wagner was present when he signed. The contract contained a clause which required the appellant to reimburse Martco a pro-rata share of the signing bonus should his employment with Martco terminate for any reason within three years. Wagner had been told that all individuals coming from Willamette to work for Martco who received a signing bonus would be required to sign a contract which included a reimbursement clause. If the appellant had not signed the contract, he would not have received the $25,000.00 signing bonus. There were no threats made to the appellant that his employment would be terminated if he failed to sign the contract.
Duress is an affirmative defense. La.Code Civ.P. art. 1005. An affirmative defense is one which raises a new matter not covered in the plaintiff's petition and which will have the effect of defeating the plaintiffs demand on its merits. Keller v. Amedeo, 512 So.2d 385 (La.1987). The party asserting an affirmative defense has the burden of proving it by a preponderance of the evidence. A Better Place, Inc. v. Giani Investment Company, 445 So.2d 728 (La.1984).
The trial court found a valid contract existed between the parties to this action. The evidence supports that finding. In order to prevail, therefore, the appellant had the burden of proving, by a preponderance of the evidence, that his consent to the contract was vitiated because he was under duress at the time he signed the contract.
The concept of duress as a vice of consent is in La.Civ.Code art.1959:
Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation. Age, health, disposition, and other personal circumstances of a party must be taken into account in determining reasonableness of the fear.
Fear of economic deprivation has been recognized as a type of duress that will vitiate consent. Wolf v. Louisiana State Racing Comm., 545 So.2d 976 (La.1989).
In the instant case, the appellant argues he was under economic duress at the time he signed the Memorandum of Understanding. He had given up the lease on his home in Ruston, quit his job, removed his children from a private school and placed them in another, and was relying on the signing bonus for the down payment of his new home. He argues he was put in a position of having to sign the agreement or *1200 not having the funds he expected to be available as the down payment.
The evidence established, and the trial court found, that had the appellant not signed the contract, he would not have received the signing bonus. His employment status, however, was not at issue if he failed to sign. His employment would not have been terminated. There is no evidence to establish that at the time he entered into the contract he objected to the terms. There is no evidence he was threatened or coerced into signing by any company representative or employee. He never voiced any concerns regarding the terms of the contract with company representatives or officials prior to or subsequent to signing. There is no evidence of bad faith on the part of his employer.
After viewing the evidence as a whole, we do not find the appellant proved, by a preponderance of the evidence fear of economic deprivation sufficient to meet the level of duress required to vitiate his consent to the terms of the employment contract. Therefore, we find no error in the ruling of the trial court. Because we find the appellant failed to carry his burden of proof on the issue of economic duress, it is unnecessary to address Assignments of Error 1 and 3.
In Assignment of Error 4, the appellant argues the trial court erred in finding that Martco's withholding of wages and vacation pay as a set-off was permissible.
At the time the appellant left Martco's employ, he was owed $1,196.72 for accrued wages and $1,531.25 for vacation pay. Martco offset these amounts against that owed by the appellant for reimbursement of a pro rata share of the signing bonus and demanded payment from the appellant of $8,435.09, the balance owed after the off-set.
The trial court found withholding the wages and vacation pay as a set-off to be permissible since the amounts due Frazier were subject to a real and bonafide dispute, the appellee acted in good faith, and Frazier owed Martco sums in excess of those stipulated wages to which he was due. The appellant argues this ruling is contrary to Louisiana's wage pay law set forth in La.R.S. 23:631 and 23:632, and has requested the trial court's ruling be reversed and the appellee be ordered to pay all wages due as well as penalties and attorney fees. We find the trial court correctly applied the applicable law.
La.R.S. 23:632 is penal in nature and therefore must be strictly construed. Penalties will not be imposed on the employer when it presents a good-faith, non-arbitrary defense to its liability for unpaid wages. Jones v. Hebert & Le-Blanc, Inc., 499 So.2d 1107 (La.App. 3 Cir.1986). When there is a bona fide dispute over the amount of wages due, failure to pay is not an arbitrary refusal and no penalties will be awarded. Hebert v. Insurance Center, Inc., 97-298 (La.App. 3 Cir. 1/7/98); 706 So.2d 1007, writ denied 98-0353 (La.3/27/98); 716 So.2d 888. The amount owed by Frazier was greater than the wages and vacation pay due him. The appellee was justified in off-setting the amount owed to the appellant against the amount the appellant owed the appellee. The trial court was correct in its determination that the off-set was proper and neither wages nor penalties are owed by appellee.
La.R.S. 23:632 further provides that reasonable attorney fees are recoverable if the employee files a "well-founded" suit, even if penalty wages are not owing. Hebert, 706 So.2d 1007. An employee's suit is deemed "well-founded" if he receives a judgment in his favor entitling *1201 him to past due wages. Jones, 499 So.2d 1107.
In the instant matter, judgment was rendered against the appellant, James Frazier. Consequently, his suit cannot be considered "well-founded." The trial court, therefore, properly denied his request for attorney fees.
We find no error in the trial court's ruling as to the enforceability of the Memorandum of Understanding signed by James Frazier. We further find the trial court was correct in its application of La. R.S. 23:631 and 23:632 to the facts of this case and properly denied Mr. Frazier's request for penalties and attorney fees under those statutes. Costs of this appeal are assessed against the appellant.
AFFIRMED.