DANIEL L. DYSART, Judge.
h James Steak sued his former employer, Hat World, Inc. (“Hat World”) pursuant to the Louisiana Wage Payment Act (“LWPA”), La. R.S. 23:631, et seq. Following trial, the trial court rendered judgment in favor of .Hat World, Mr. Steak appeals that judgment.
FACTUAL BACKGROUND:
James Steak was hired by Hat World on May 17, 2014, to manage a new store in the Riverwalk in 'New Orleans. During his short tenure with, the company, he received two corrective actions, one for not making store deposit's timely and one for not completing daily sales ■ plans. Additionally, he was reprimanded for being rude to a customer and for accepting (or allowing a subordinate to accept) personal checks, which.was against company policy. On September 2,-2014, Mr. Steak was fired for smoking an electronic cigarette in the store, which was ■ also' a violation of company policy.
Mr. Steak received a final paycheck on the next scheduled payday; however, he claims that three and one-half days of accrued vacation pay was not included in |2the check, as required by law. Mr. Steak also claims that he was due monies for bonuses'to which he was entitled pursuant to certain company incentive programs for managers. Specifically, he argues -that his July 2014 bonus was inappropriately split with his assistant manager, and that he was denied his August bonus. He also questions' an amount deducted from his July bonus for an insufficient fund check that was accepted by an associate. As Hat World did not pay the wages to which he is entitled, Mr. Steak alleges that he is also due penalty wages, attorney fees and costs.
Hat World argues that it acted in good faith in paying Mr. Steak his vacation pay after demand, thereby eliminating any claim for alleged penalty wages. Additionally, it argues' that Mr. Steak was not entitled -to- additional bonuses as: 1) his store incurred actual losses, for insufficient funds checks 'accepted, which amounts were .legally deducted from his July bonus *714 according to company policy; and, 2) as per company policy, after review of his performance by the Operations Department, it, was determined that he was not eligible for or entitled to a bonus for August as he was not employed and in good standing during the period in which the bonus .would have been paid.
Following a trial, the -trial court found in favor of Hat World. The trial court found that Mr. Steak had received his final paycheck on September 15, 2014,. the next regularly scheduled pay day, which, did not include pay for accrued vacation time. After making formal demand via email to his district -manager for ■ the. additional amounts due, which Mr-.- Steak claimed included additional amounts for |aJuiy and August bonuses, a check was cut by .Hat World .on October 10; 2014. The check was mailed to the Riverwalk store, but when Mr. Steak arrived to pic,k it up, the check could not be located. Thereafter, Mr. Steak’s attorney mailed a letter to Kristopher King, Hat World’s Human Resources director, on October 15, 2014, demanding the missing payments. Mr. King testified at the hearing that he immediately had the payroll department issue another check, but when he saw that the cheek omitted the-two promised days of additional vacation- pay, he had another issued, and sent the two checks via United Parcel Service to Mr. Steak’s home address. Mr. King then called Mr. Steak to notify him of the mailing. -When Mr. Steak told Mr. King that he would not be home to receive the checks, Mr. King had another check sent directly to Mr. Steak’s attprney, which was received on October 21, 2014.
As to the bonuses Mr. Steak claims -he ■was due, the trial court relied on the testimony of Hat World’s district-., manager, Ben Eisenberg, who testified that an employee must be in good standing' during the period a bonus is paid to -be eligible, and that any proposed- bonus must be reviewed and authorized by the Loss Prevention - Department... and the Operations Department prior to paying. As Mr. Steak had received two corrective actions, a customer complaint, and had allowed an insufficient funds check to be accepted, the amounts paid to him were correct. The court recognized that Mr. Steak had electronically signed a form acknowledging that he had read and understood the Employee Handbook, including the policies regarding 'accepting personal checks, bonus payments and 14smoking in the store. According to testimony; the Employee Handbook was available for review online, and a hardcopy was available in the store sometime in June 2014.
Thus, based on the record 'evidence and the testimony ■’ at the hearing, the trial cóurt found that Mr. Steak’s July bonus was correctly reduced for violating policies on accepting personal checks, and that his August bonus was not due as he was not in good standing at the time the bonus was to be paid. As to his vacation pay, the trial court found that Hat World made a good faith effort to comply with the LWPA, and therefore was not liable for penalty pay, attorney fees or costs.
DISCUSSION:
The statutes primarily applicable to this case are La. R.S. 23:631 and 23:632. La. R.S. 23:631 provides in;pertinent part:
La. R.S. 23:631 A(l)(a) Upon discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday.or no later than fifteen days, following the date of discharge, whichever occurs first.
[[Image here]]
*715 (2) Payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee’s or laborer’s current address as shown in the employer’s records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or | ¿other official documentation' from the United States Postal Service.
[[Image here]]
B. In- the event of a dispute as to the amount due' under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section....
[[Image here]]
D.(l) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of (the following apply:
(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
La. R.S. 23:632 provides- in pertinent part:
An employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee for 90 days wages at the employee’s daily rate of pay, or else for full wages from the time the employee’s demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is thé lesser amount of penalty wages. Reasonable attorney’s fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event of a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
The focus of the LWPA is to compel an employer to pay. the employee promptly after the employment is terminated. Boudreaux v. Hamilton Medical Group, Inc., 94-0879 (La.10/17/94), 644 So.2d 619, 622. The LWPA is penal in nature, and therefore must be strictly construed, and its provisions must yield to equitable defenses. La. R.S. 23:631 and 23:632; Boudreaux, supra; Kaplan v. Rimkus Consulting Group, Inc. of La., 09-1275, p. 12 (La.App. 4 Cir. 4/28/10), 39 So.3d 725, 733.
To recover penalty wages, an'employee must show'that 1) wages were due and owing; 2) demand for payment was .made at the place where the employee was customarily paid; and 3) the employer did not pay after demand within the time specified by La. R.S. 23:631. Becht v. Morgan Bldg. Spas, Inc., 02-2047, p. 4 (La.4/23/03), 843 So.2d 1109, 1112; Beard v. Summit Institute for Pulmonary Medicine and Rehabilitation, Inc., 97-1784, p. 3 (La.3/4/98), 707 So.2d 1233, 1236. Demand should not be necessary where the amount due is not in dispute, but the LWPA requires demand for penalty wages to apply. La. R.S. 23:632.
If a bona fide dispute exists over the amount of wages due, an employer’s failure to pay is not an arbitrary refusal *716 and no penalties will be awarded. Kwplon, supra. However, when the employer is arbitrary or sets out procedural pitfalls for the employee or is merely negligent in failing to pay past due wages, penalty wages will be assessed, as negligence is not a good faith defense. See Kaplon, supra. An employer may be subject to paying penalty wages, depending on whether the employer’s dispute over the amount of wages owed is in good faith. La. R.S. 23:632 B. The fact that the employer might ultimately be wrong about its good faith defense should not prevent the reasonableness of the action from constituting an equitable defense. Martco Partnership v. Frazier, 01-72 (La.App. 3 Cir. 6/6/01), 787 So.2d 1196.
17A trial court’s determination of whether an employer is arbitrary or in bad faith for purposes of imposing penalty wages is a question of fact and is, therefore, subject to the manifest error standard of review. Kaplon, 09-1275, p. 12, 39 So.3d at 733; Loup v. Louisiana State School for the Deaf, 98-0329, p. 6 (La.App. 1 Cir. 2/19/99), 729 So.2d 689, 693.
The issues raised on appeal relate to the applicability of the LWPA — -whether vacation pay was paid timely, and whether bonuses were due and owing. We will address each issue separately.

Vacation Pay:

Mr. Steak contends that Hat World did not pay him for accrued vacation time until October 21, 2014 — fifty days after termination and twenty days after demand. He argues that Hat World’s failure to pay him through its customary method of payment, direct deposit, caused him financial hardship.
It is undisputed that Mr. Steak received a pay check on the next scheduled pay date, September 15, 2014. However, the check did not contain the three and one-half days of accrued vacation time to which he claimed he was entitled or the bonuses he claimed he was due. Mr. Steak made demand for the accrued vacation pay on October 1,2014,
The trial court found that Hat World made a good faith effort to comply fully with its statutory obligation to pay Mr. Steak timely. Once notified of the missing vacation pay, Hat World immediately issued an additional check to compensate Mr. Steak. We agree.
IsThe testimony supports that Hat World’s corporate office attempted to remedy the error quickly and reasonably. The complications with delivery of the check to Mr. Steak were not the fault of Hat World. Further, although Mr. Steak argues that he should have had the amounts deposited directly into his checking account, La. R.S. 23:631 A(2) provides that payment may be made by mail.
Contrary to Mr. Steak’s contention that he should have received the vacation pay by direct deposit, Jereamy Bretz, Hat World’s payroll manager, testified that when his department receives notice of a termination, direct deposit is shut off. Unless direct deposit is turned back on, any subsequent pay checks would be issued by mail. This is consistent with the sequence of events in this case: Mr. Steak received his final pay check by direct deposit, the payroll department received notice of his termination and direct deposit was discontinued, and the subsequent check for vacation pay was mailed to the store. There is record evidence that when the corporate office learned that the first mailed check had not been received at the store, Hat World attempted to deliver the check to Mr. Steak by express United Parcel Service delivery, but learned after the check was sent that Mr. Steak would not be home to accept delivery. Hat *717 World then sent the check directly to counsel for Mr. Steak.
Thus, we find no manifest error in the trial court’s finding that Hat World was not in bad faith for not timely paying vacation pay to Mr. Steak.
| ⅛Bonuses:
Mr. Steak argues that the trial court erred in finding he was not due additional amounts for a July bonus and the total amount of an August bonus. La. R.S. 23:631 A(l)(a) establishes that it is the employee’s burden to show any unpaid bonus amount was due under the terms of his employment.
Hat World had several incentive programs available to its store managers. The Incentive Program was a program contained within the Policy and Procedures Manual, which Mr. Steak acknowledged in writing that he read and understood during the hiring process.
The Incentive Program specifies that an associate would be eligible to receive a bonus if employed and in good standing at the time of the payout. Additionally, the program explains that deductions may be taken from a payout to compensate for issues or policy violations that result in loss of assets to the company, such as missing or late deposits and non-compliance with check acceptance policies. The program guidelines state: “Store managers can be held responsible for infractions by part-time associates, and deductions can be taken to compensate for any losses.” (bold in original.) Last, the guidelines explain that all program results are subject to review by the Operations and Loss Prevention Departments.
Evidence adduced at trial indicated that Mr. Steak received two corrective actions, one in July and one in August of 2014. The July corrective action was for not completing the store budget, goals, training, and schedules on a daily basis. |inThe Corrective Action form indicates that this is a non-negotiable policy. The August corrective action was for failing to make store deposits in a timely and verified manner. Mr. Steak acknowledged at trial that he knew that he could have challenged the corrective actions, but did not.
Ben Eisenberg, Mr. Steak’s district manager, testified that he recommended that the July bonus for the store be split between Mr. Steak and Randy Porte. Ei-senberg explained that he made the initial decision to split the bonus between Mr. Steak and Porte because the two men were sharing responsibilities, but that his decision was subject to review by his superiors. The Loss Prevention Department was charged with reviewing a potential bonus, and would adjust a bonus payout for any amounts lost due to receipt of an insufficient funds check. As an associate accepted an insufficient funds check in July, and Mr. Steak was responsible for training that associate, the funds were deducted from his July bonus. Thus, the final decision to split the bonus between Mr. Steak and Porte and to deduct losses from his award was approved by the corporate office according to the Employee Handbook. Although Mr. Steak argues that Porte was an assistant manager at the time, he also acknowledged that Porte had been a store manager, and was in the process of being promoted to a trainer position. He was aware that Porte had been placed at the Riverwalk store pending his promotion.
Eisenberg also testified that to be entitled to receive a bonus, the store must exceed its sales budget. The manager must be an active employee at the time of the payout, not just in the month the sales occur, and must be in good standing with J_ythe company. Since Mr. Steak was not an active employee and not in good stand *718 ing due to his several infractions and firing at the time the payout would have been made, he was not entitled to receive a bonus for August.
We find that Hat World acted reasonably and in good faith in its efforts to make the vacation payment and, further,' we find no additional bonus monies were owed to Mr. Steak. Accordingly, we affirm the judgment of the trial court dismissing all claims of Mr. Steak against Hat World.
AFFIRMED