KIRA REAVER          *       NO. 2022-CA-0464

VERSUS               *

DEGAS HOUSE, L.L.C.      *       COURT OF APPEAL

                             FOURTH CIRCUIT

                      *      

                             STATE OF LOUISIANA

              * * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-03665, DIVISION "B-5"
Honorable Rachael Johnson,
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Karen K Herman, Judge Nakisha Ervin-Knott)

**ERVIN-KNOTT, N., CONCURS IN PART AND DISSENTS IN PART WITH REASONS**

Richard A. Chopin
Justin M. Chopin
Michael D. Letourneau
THE CHOPIN LAW FIRM LLC
650 Poydras Street, Suite 1550
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/APPELLANT, KIRA REAVER

William Patrick Klotz
KLOTZ & EARLY
909 Poydras Street, Suite 2950
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLEE, DEGAS HOUSE, LLC

                                    **AFFIRMED**
                            **MARCH 13, 2023**

*TFL*

*KKH*

This appeal arises from the employment of Kira Reaver by Degas House, LLC. After Ms. Reaver resigned, she made a formal request for payment of past commissions and overtime compensation, which Degas refused to tender. Ms. Reaver filed a petition seeking same from Degas. The trial court denied Ms. Reaver's request for overtime compensation and penalties, but granted her request for commissions for $426.00.

Ms. Reaver appeals, contending that the trial court erred by 1) not awarding penalty wages, 2) preventing the admittance of notes taken during a meeting between Degas' owner and accountant, and 3) not awarding overtime compensation.

Our review of the record reveals that Ms. Reaver did not properly preserve the issue of whether the evidence was improperly excluded because the documents were not proffered. Further, the trial court did not commit manifest error by denying Ms. Reaver's request for penalties, as a good faith dispute existed regarding the amount owed. Ms. Reaver also failed to prove her entitlement to overtime compensation. Thus, the judgment of the trial court is affirmed.

### *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

Degas runs a hotel and event venue. Ms. Reaver was hired by Degas as an event sales manager around August 1, 2017. She was expected to sell the venue to potential clients for their events, coordinate, and work the events. Ms. Reaver was hired as a salaried employee for $38,000.00 a year. Ms. Reaver asserts that she was also promised twenty-five percent of the service fees for each event worked, as well as overtime compensation for hours worked over forty hours a week.

Ms. Reaver tendered her two-week notice and resignation letter to David Villarrubia, the owner and operator of Degas, in February 2018. After resigning, Ms. Reaver made several demands upon Mr. Villarrubia for payment of her unpaid commissions and overtime compensation, which Degas did not pay.

Ms. Reaver then filed a Petition for Unpaid Wages, Commissions, Penalties, and Attorney's Fees seeking $5,316.57 in overtime compensation and $10,678.03 in commissions. Following a bench trial, the trial court found that Ms. Reaver was not entitled to overtime compensation, as she was a salaried employee. The trial court awarded Ms. Reaver $426.00 in unpaid commissions. Ms. Reaver's request for penalties was dismissed with prejudice, as the trial court found there was a good faith dispute regarding the amount owed. Further, the trial court awarded court fees and attorney's fees but deferred a determination on the amount owed.[1]

---

[1] The record contains two judgments signed by the trial court on the same date. The first judgment was submitted by counsel for Ms. Reaver, while the second was submitted by counsel for Degas. Both judgments are substantially similar. However, the second judgment has "DENIED" stamped over the $426.00 award. Neither party addressed this record discrepancy in their briefs.

Trial courts lack the ability to change the substance of judgments absent the usage of proper procedure like a motion for new trial. *Bourgeois v. Kost*, 02-2785, pp. 7-8 (La. 5/20/03), 846 So. 2d 692, 696. Judgments altered without following proper procedure are absolute nullities. *Id.*, 02-2785, p. 8, 846 So. 2d at 696. As such, we proceed utilizing the first judgment signed in the record, which awarded Ms. Reaver $426.00.

## *STANDARD OF REVIEW*

A trial court's factual determinations made after a bench trial are reviewed with the manifest error/clearly wrong standard of review. *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La. 4/14/04), 874 So. 2d 90, 98. This standard "precludes the setting aside of a district court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety." *Id*. "Of course, the reviewing court may not merely decide if it would have found the facts of the case differently." *Ambrose v. New Orleans Police Dep't Ambulance Serv.*, 93-3099, p. 8 (La. 7/5/94), 639 So. 2d 216, 221. We previously expounded upon the standard thusly:

> "This court has announced a two-part test for the reversal of a factfinder's determinations." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993). First, "[t]he appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court." *Id*. Second, "the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous)." *Id*. "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Id*. "Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." *Id*.

*Hamilton v. Burns*, 16-0107, p. 4 (La. App. 4 Cir. 9/28/16), 202 So. 3d 1177, 1181.

Further,

> "The manifest error standard of review also applies to mixed questions of law and fact." *A.S. v. D.S.*, 14–1098 (La.App. 4 Cir. 4/8/15), 165 So.3d 247, 254. However, "[l]egal questions are reviewed utilizing the *de novo* standard of review." *Robert v. Robert Mgmt. Co., LLC*, 11–0406 (La.App. 4 Cir. 12/7/11), 82 So.3d 396, 398. We must determine "whether the court's interpretive decision is legally correct." *Duhon v. Briley*, 12–1137 (La.App. 4 Cir. 5/23/13), 117 So.3d 253, 258.

*Id.*

## *ADMISSIBILITY OF EVIDENCE*

Ms. Reaver contends the trial court erred by preventing her from admitting Mr. Villarrubia's notes from a meeting with the Degas bookkeeper into evidence. The notes allegedly demonstrate that Mr. Villarrubia believed Degas owed Ms. Reaver overtime compensation to some degree. Degas counters that this Court cannot review this assignment of error because the notes were not proffered into evidence and are not contained in the record. Degas' contentions have merit.

While Mr. Villarrubia was being questioned by counsel for Ms. Reaver, counsel attempted to introduce notes allegedly written by Mr. Villarrubia during a meeting between him and Degas' former bookkeeper. The notes were alleged to show that Mr. Villarrubia knew he owed Ms. Reaver some amount of overtime compensation and commissions. The trial court permitted a line of questioning concerning the notes as a method of impeaching Mr. Villarrubia's testimony based on answers he previously gave at his deposition. However, the trial court did not permit the notes to be admitted into evidence.

Evidence excluded by the trial court can be proffered to ensure review. *See* La. C.C.P. art. 1636. "It is incumbent upon the party who contends his evidence was improperly excluded to make a proffer, and if he fails to do so, he cannot contend such exclusion is error." *Ritter v. Exxon Mobile Corp.*, 08-1404, p. 9 (La. App. 4 Cir. 9/9/09), 20 So. 3d 540, 546.

In the present matter, counsel for Ms. Reaver did not proffer the notes other than the limited questioning permitted to impeach Mr. Villarrubia. Therefore, the page of notes is not contained in the record. Counsel for Ms. Reaver was

responsible for proffering the evidence to ensure appellate review. "Having made no offer of proof, appellant cannot now complain on appeal." *Burrell v. Schlesinger*, 459 So. 2d 1195, 1199 (La. App. 4th Cir. 1984). Accordingly, this assignment of error lacks merit.

## *PENALTY WAGES*

Ms. Reaver maintains the trial court erroneously interpreted La. R.S. 23:631 and La. R.S. 23:632 by excluding the award of penalty wages.

### *Trial Court's Initial Inclination to Award Penalty Wages*

Ms. Reaver contends that the trial court erred by refusing to award penalties because of the initial inclination to award penalties. Thus, Ms. Reaver avers the trial court "decided to switch its ruling after realizing that penalty wages in the amount of 90 days wages [were] required to be awarded under the statute."

The transcript from the bench trial reveals that the trial court was initially inclined to award penalties. However, after discussion with counsel, the trial court took a recess to have an in-chambers conference with counsel and review the statute. After recess, the trial court stated:

> Okay. After an extensive conversation in chambers with Counsel off the record, I wanted to review the statute again that governs this case and the penalties and what the penalties are awarded for. And so if I find that the dispute was not in good faith, then the penalties in this case shall be for a period wages -- for a period of 90 days at the employee's daily rate of pay. Because I looked at that and I thought that I would be able to assign a penalty, I did not realize that it's — the statute calls for a shall. I don't believe that that is — it's not commensurate with the amount that is owed in this case.
> And so I am still ruling in favor of Plaintiff for the commission on those three events, December 12, 21, and January 14th, but I am going to revise my judgment to reflect that the dispute over the wages on the behalf of the employer, was in good faith. And so they are going to just pay the wages and the judicial interest incurred. And

then we can set the attorney's fees at a later date.

The written and signed judgment provided, "It is further ORDERED, ADJUDGED AND DECREED that a good faith dispute as to the amount of wages existed and therefore Plaintiffs claim for penalties is DISMISSED with prejudice."

Our job, as an appellate court, is to review written judgments. *Carter v. Ameer LLC*, 18-0703, p. 3 (La. App. 4 Cir. 2/27/19), 265 So. 3d 922, 924. As the Louisiana Supreme Court stated, "the district court's oral or written reasons for judgment form no part of the judgment, and . . . appellate courts review judgments, not reasons for judgment." *Wooley v. Lucksinger*, 09-0571, p. 77 (La. 4/1/11), 61 So. 3d 507, 572 (quoting *Bellard v. American Cent. Ins. Co.*, 07-1335, p. 25 (La. 4/18/08), 980 So. 2d 654, 671). *See also Theresa Seafood, Inc. v. Berthelot*, 09-0814, p. 7 (La. App. 4 Cir. 3/10/10), 40 So. 3d 132, 137, *amended on reh'g* (5/12/10). "Furthermore, where there is a conflict between the judgment and the written reasons, the judgment controls." *Theresa Seafood, Inc.*, 09-0814, p. 7, 40 So. 3d at 137. As such, the trial court's oral reasoning contained in the trial transcript does not form a basis for reversing the judgment, if the judgment is substantively sound. Accordingly, we proceed with our substantive analysis of the trial court's written and signed judgment, which denied Ms. Reaver's request for penalty wages.

### Review of Written Judgment

The Louisiana Wage Payment Act, La. R.S. 23:631(A)(1)(b) provides:

> Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time

of separation or no later than fifteen days following the date of resignation, whichever occurs first.

Further, La. R.S. 23:631(B) states that "[i]n the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section." Moreover, as to noncompliance with these provisions:

> any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.

La. R.S. 23:632(A). However, if "an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed." La. R.S. 23:632(B).

"To recover penalty wages, an employee must show that 1) wages were due and owing; 2) demand for payment was made at the place where the employee was customarily paid; and 3) the employer did not pay after demand within the time specified by La. R.S. 23:631." *Steak v. Hat World, Inc.*, 15-1108, p. 6 (La. App. 4 Cir. 5/4/16), 191 So. 3d 712, 715. The Louisiana Supreme Court stated that the statutes were designed to compel prompt payment and that, as penal in nature, must "be strictly construed and yield to equitable defenses." *Wyatt v. Avoyelles Par. Sch. Bd.*, 01-3180, pp. 7, 15 (La. 12/4/02), 831 So. 2d 906, 912, 916. Therefore, "[i]f a bona fide dispute exists over the amount of wages due, an employer's failure to pay is not an arbitrary refusal and no penalties will be

7

awarded." *Steak*, 15-1108, p. 6, 191 So. 3d at 715-16. "A trial court's determination of whether an employer is arbitrary or in bad faith for purposes of imposing penalty wages is a question of fact and is, therefore, subject to the manifest error standard of review." *Id*., 15-1108, p. 7, 191 So. 3d at 716.

During the bench trial, Ms. Reaver testified that Degas clients were charged a twenty percent service fee, twenty-five percent of which was owed to her as commission as the event sales manager for events worked. While under cross-examination, Ms. Reaver was asked whether Mr. Villarrubia informed her that commissions were only earned on events sold and worked. Ms. Reaver responded that "[h]e may have said that," but that she recalled it was earned on events worked.

Mr. Villarrubia testified that Ms. Reaver was only entitled to commissions on events "booked and worked" in the amount of twenty percent of the service fee, not twenty-five. Mr. Villarrubia also alleged, for the first time, that Ms. Reaver's last check included the commissions for two events she booked and worked. However, the check stub did not reflect that the check included commissions. Mr. Villarrubia did not know how much of Ms. Reaver's last check was for commissions. Mr. Villarrubia stated he did not have any documents to show how much Degas paid Ms. Reaver in commissions.

The trial court viewed the evidence and stated:

> The — regarding the commissions, there's testimony that says it's worked and booked; there's testimony that says it's booked; and there's testimony that says it's just worked, it makes sense to me that it would be worked and booked because if a person booked the event but didn't work it, the person who just works it and doesn't book it — they don't get any of the commission; the person that booked it — so the worked and booked — I am going to — that is what I believe the

8

> scheme was. Now — in terms of the pay scheme for Degas House.
>
> There is also no record of her being paid any commission. I know Mr. Villarrubia testified that "Oh, it was in her last check. Let's do the calculations." There's no notations; there's nothing. Ms. Reaver testified that she worked and booked at least three events — December 12th, the NOLA Press Club, December 21st, the Odyssey House Luncheon, and January 14th, the Rich and Holton wedding. I am of the opinion that she is owed the 20 percent commission as it relates to those three events.

The trial court found that there was a good faith dispute between Degas and Ms. Reaver; therefore, penalties were not justified. Upon reviewing the testimony and evidence presented at trial, we find no manifest error in the trial court finding that a good faith dispute existed. The parties disagreed upon the percentage of the service fee that constituted commission and which events qualified Ms. Reaver for commission, i.e., worked versus booked and worked. The statute and jurisprudence are clear that if good faith is found, then penalties are not warranted. *See* La. R.S. 22:632(B). *See also Beard v. Summit Inst. of Pulmonary Med. & Rehab., Inc.*, 97-1784 (La. 3/4/98), 707 So. 2d 1233; *Steak*, 15-1108, p. 6, 191 So. 3d at 716; *Fahed v. Ayesh*, 16-748, p. 4 (La. App. 3 Cir. 2/15/17), 211 So. 3d 1179, 1183; *Hebert v. Ins. Ctr., Inc.*, 97-298, p. 11 (La. App. 3 Cir. 1/7/98), 706 So. 2d 1007, 1014; *Blanson v. Town of Richwood*, 46,755, p. 5 (La. App. 2 Cir. 12/14/11), 81 So. 3d 230, 234, *amended on reh'g* (1/23/12). As such, we find that Ms. Reaver's assertions regarding penalty wages lack merit.

### *OVERTIME COMPENSATION*

Ms. Reaver asserts the trial court "failed to conduct the appropriate test to determine whether an employee is exempt from overtime compensation under the Fair Labor Standards Act." However, Ms. Reaver did not plead the Fair Labor

9

Standards Act until filing her appellant brief. In her reply brief, Ms. Reaver stated, "[t]o be clear, Appellant is not seeking recovery of overtime pay under the FLSA." Nonetheless, Ms. Reaver asserts that "the FLSA does set forth the circumstances of employment when overtime pay is eligible and ineligible, and the test considers many factors other than whether the employee is salaried or not."

In order to recover for unpaid overtime compensation pursuant to La. R.S. 23:631, Ms. Reaver bore the burden of proof that overtime was indeed due. *See Carey v. Orleans Ins. Co.*, 337 So. 2d 317, 319 (La. App. 4th Cir. 1976). *See also Acosta v. Am. Pollution Control Corp.*, 18-348, p. 3 (La. App. 3 Cir. 12/28/18), 262 So. 3d 470, 472.

During the bench trial, Ms. Reaver testified that she was hired to work forty hours a week with a yearly salary of $38,000, plus commissions. She received $1,461.54 every two weeks. Ms. Reaver stated that she kept track of her hours worked on her cell phone and then used an Excel spreadsheet. Her log of hours was introduced into evidence. Within a few weeks of working at Degas, Ms. Reaver realized that she was working more than forty hours a week. She testified that she discussed the issue with Mr. Villarrubia on the way to a work event. Ms. Reaver stated that Mr. Villarrubia wanted to take a look at the number of hours she worked to "make sure that you're paid." However, Ms. Reaver did not receive overtime compensation. Ms. Reaver then raised the issue again with Mr. Villarrubia, who alleged she would "get" the money, but that Degas did not have the money at the time. Ms. Reaver contended she asked Mr. Villarrubia about overtime compensation three to five times. Ms. Reaver stated that Mr. Villarrubia expressed a desire to make all employees clock in, but he never instituted a policy.

On cross-examination, Ms. Reaver testified that she was not offered

overtime when she was hired but that her salary was based on forty hours per week. She also stated that no one with Degas kept a log of her work hours. On redirect, Ms. Reaver maintained that she discussed her salary with the Degas Director of Sales and Marketing and that it was based on forty hours a week.

Mr. Villarrubia testified that the event sales manager was a salaried position that would sometimes require more than forty hours a week of work. He stated that the number of hours worked depended on the season and how many events Degas had scheduled. He said he never discussed overtime with Ms. Reaver. Mr. Villarrubia testified that Degas did not track hours worked and did not pay overtime. However, when attempting to admit into evidence the alleged business record discussed above, Mr. Villarrubia admitted that he met with Degas' bookkeeper to discuss financial matters, which included how much money he might possibly owe Ms. Reaver. Mr. Villarrubia stated, "I was trying to figure out how a salaried employee could possibly hit me up for overtime."

Our review of the testimony and evidence presented at the bench trial reveals that the only evidence of Ms. Reaver's entitlement to overtime compensation was her own testimony. As the trial court stated:

> I think the record is clear through the testimony and through the documentary evidence that's come — documents that have come into evidence that Ms. Reaver was a salaried employee. There's nothing in the record that indicates that she's owed any overtime. So I think the record is clear that that was not a part of the pay scheme, and so I'm denying the request for overtime.

The record demonstrates that Ms. Reaver was a full-time, salaried employee with no history of receiving overtime compensation. Accordingly, the trial court did not commit manifest error by denying Ms. Reaver's demand for overtime.

### *DECREE*

For the above-mentioned reasons, we find that the issue of whether the notes allegedly written by Mr. Villarrubia were properly excluded was not preserved for review. We also find that the denial of penalty wages due to a good faith dispute was based on a reasonable interpretation of the evidence. Likewise, as evidence of Ms. Reaver earning overtime compensation, the trial court did not err by denying the request for overtime. As such, the judgment of the trial court is affirmed.

**AFFIRMED**