ERIC A. LANNON       *       NO. 2024-CA-0757

VERSUS       *       COURT OF APPEAL

PHERIAN, LLC       *       FOURTH CIRCUIT

           *       STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2024-05738, DIVISION "E"
Honorable Omar Mason, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Tiffany Gautier Chase, Judge Dale N. Atkins, Judge Rachael D. Johnson)

Justin B. Schmidt
LAW OFFICE OF JUSTIN B. SCHMIDT, LLC
1506 Seventh Street
New Orleans, LA 70115

      COUNSEL FOR DEFENDANT/APPELLANT, Pherian, LLC

**AFFIRMED**
**JULY 14, 2025**

DNA

TGC

RDJ

This is a dispute over unpaid wages. Appellant, Pherian, LLC ("Pherian"), seeks review of the trial court's July 26, 2024 judgment, which granted a petition for unpaid wages filed by Appellee, Eric A. Lannon ("Mr. Lannon"). The judgment further ruled that Pherian was not in good faith in its dispute with Mr. Lannon and ordered Pherian to pay wage penalties and attorney fees. For the following reasons, we affirm the trial court's judgment.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**<u>Petition for Unpaid Wages</u>**

On June 21, 2024, Mr. Lannon filed a "Petition for Unpaid Wages and Rule to Show Cause (Summary Proceeding under Louisiana Wage Payment Act La. R.S. 23:632)" ("Petition"). Therein, Mr. Lannon contended he worked as a business development representative for Pherian in Louisiana with his "work consist[ing] of new customer acquisition and growing existing business in Louisiana for commercial construction [here]." Mr. Lannon explained that he sent a demand letter to Pherian on June 3, 2024, for unpaid wages from September 1, 2023, to October 27, 2023, in the amount of $30,769.23. Mr. Lannon alleged that Pherian received the demand letter via its agent of process on June 4, 2024.

1

According to Mr. Lannon, Pherian "made no good faith attempt to pay [his] unpaid wages under . . . La. R.S. 23:632," such that he was entitled to statutory penalties and attorney fees. Further, Mr. Lannon asserted he was entitled to a summary proceeding under La. R.S. 23:631(B) to collect his unpaid wages, penalties, and attorney fees. The end of Mr. Lannon's Petition has a June 26, 2024 order signed by the trial court, which set the summary hearing in this matter for July 26, 2024.

Pherian did not answer Mr. Lannon's Petition.[1] In the record before this Court is a July 17, 2024 affidavit of long arm service pertaining to Mr. Lannon's Petition and citation, stating the affiant delivered a copy of the Petition and citation to Pherian via its registered agent on July 3, 2024.

### Hearing and Judgment

*Exhibits*

On July 26, 2024, the trial court held a summary hearing on Mr. Lannon's Petition. Pherian was not present at the hearing. During the hearing, Mr. Lannon offered, filed, and introduced multiple exhibits into evidence. These exhibits included the June 3, 2024 demand letter sent to Pherian's registered agent by Mr. Lannon's attorney with an associated "Proof of Delivery" printout with the USPS tracking number, as well as an affidavit of mailing for the demand letter. Mr. Lannon also submitted into evidence a printout of a screenshot of an email sent from Brian Marshall ("Mr. Marshall")[2] (with an email address at "Pherian.com") to Mr. Lannon. The email had a subject line of "Employment Info" and stated:

---

[1] We note, however, that the "Summary Proceedings" section of the Louisiana Civil Code states, "An answer is not required, except as otherwise provided by law." La. C.C.P. art. 2593. As delineated, Mr. Lannon filed his Petition as a summary proceeding and the trial court set this matter for a summary hearing.

[2] Mr. Marshall's full name does not appear in the email, but it is revealed elsewhere in the record.

2

- ➤ Salary 200k per year
- ➤ Bonus 20% of Net Profit on your generated business
- ➤ Company does not include any type of benefits at this time . . . .
- ➤ Company credit card for expenses
- ➤ Employee has own truck
- ➤ Employee has own computer

Another printout of a screenshot that Mr. Lannon submitted as an exhibit was a text message he sent to Mr. Marshall on November 8, 2023, demanding payment for three missed payrolls.

Additionally, Mr. Lannon submitted as an exhibit a printout of a July 2, 2024 email he received from Carol Morales ("Ms. Morales") with an email address at "KymberlyGroup.com." In her email, Ms. Morales stated, "Due to our [Professional Employer Organization[3]] relationship, paystubs and w2 [sic] forms will show Kymberly Group as the employer, although the work would have been completed for [Pherian]." Mr. Lannon also submitted as exhibits printouts of screenshots titled "Transaction Details," which show deposits on May 12, 2023; May 25, 2023; June 9, 2023; June 26, 2023; July 7, 2023; July 21, 2023; and September 1, 2023.[4] These screenshots all stated "Appears on your statement as: Deposit from Kymberly Group P Payroll" and "Memo PAYROLL." Additionally, Mr. Lannon submitted into evidence one of his W-2 forms. In pertinent part, Mr. Lannon's W-2 lists "Kymberly Group Payroll Solutions II, Inc." as his employer.

***Mr. Lannon's Testimony***

---

[3] Ms. Morales' email used the acronym "PEO" instead of "Professional Employer Organization." Appellate courts "can take judicial notice of government websites." *Pri-Tal v. Progressive Prop. Ins. Co.*, 2024-0531, p. 1 (La. App. 4 Cir. 5/14/25), ___ So.3d ___, ___, n.1, 2025 WL 1414743, at *1 (quoting *Filmore Parc Apartments II v. White*, 2024-0475, 0476, p. 15 (La. App. 4 Cir. 2/14/25), ___ So.3d ___, ___, n.4, 2025 WL 502045, at *7). Accordingly, we take judicial notice that "PEO" stands for "Professional Employer Organization" according to the IRS' website. *See Third party payer arrangements – Professional Employer Organizations*, IRS (last updated Nov. 15, 2024), https://www.irs.gov/government-entities/third-party-payer-arrangements-professional-employer-organizations.

[4] Each of the deposits was in the amount of $5,322.35; $5,322.36; or $5,322.37.

During the hearing, Mr. Lannon testified that he was there "[t]o collect wages that were not paid to [him]." When asked for whom he worked, Mr. Lannon responded that he worked for Pherian, a commercial construction company, and did business development for the company in Louisiana. Mr. Lannon explained that his salary was $200,000 per year plus commission and that he had not received his last four paychecks for work he performed before his employment relationship with Pherian ended.[5] Mr. Lannon explained that after he failed to receive his last four paychecks he learned that "[o]ther people in the company had not been paid as well, and that there [were] some financial issues." Further, while discussing the exhibits titled "Transaction Details," Mr. Lannon explained that these were screenshots from his bank account that showed the amount directly deposited into his bank account every two weeks "[a]fter taxes and federal, state, social security, whatever they take out." Mr. Lannon testified that the amount owed to him for his last four paychecks was $30,769.23 before taxes. He explained that he should have received this money in September and October 2023.

Mr. Lannon discussed the July 2, 2024 email from Ms. Morales and testified the email came from an entity called Kymberly Group.[6] Before reading aloud the content of the email, Mr. Lannon explained that Pherian used a service called Kymberly Group which handled its workers' compensation and payroll. The trial court further questioned Mr. Lannon about the nature of his work and relationship with Pherian, whereupon the following colloquy occurred:

---

[5] During his testimony, Mr. Lannon did not specify whether he resigned or if Pherian discharged him. In its brief to this Court, Pherian states, in pertinent part, "when Pherian decided to stop using the leased services of [Mr.] Lannon," thereby indicating that Pherian discharged Mr. Lannon.

[6] The transcript of the hearing uses the spelling "Kimberly." However, because Ms. Morales' email used the spelling "Kymberly," this Opinion has done the same.

Q.    And what exactly were your duties involved with respect to the business development?

A.    So I was bringing over like prior to Pherian I might have temporary housing from Hurricane Ida for the State for Jefferson Parish and Plaquemines Parish. I had a lot of state contracts when it comes to natural disasters and . . . so I was bringing that division into Pherian to run and lead that division, as well as bring in some JD partnerships with companies in Louisiana that [I have] done work for . . . .

Q.    What was the nature of your relationship with Pherian; were you a full-time employee --

A.    I was a full-time employee; yes, Sir.

[Q.] [D]id you have any type of written contract with Pherian?

A.    Yes, sir. I [cannot] locate where I had it [because my employment agreement was sent to an email address I no longer have access to], but yes I had an employment agreement. That is correct.

. . . .

THE COURT:    I guess [I am] just trying to get through that establishment of the entitlement to the wages. . . . I [do not] see anything from Pherian itself with respect to the employment relationship and [that is] my only concern at this juncture. Because I think that [you have] certainly proven that [you have] not been paid during a certain period of time -- during a stated period of time. I believe you made your demand. You met that. The question is entitlement to wages for the time period between September 2023 through October. I know that the employment agreement certainly would have been useful and helpful in this regard. I just [do not] see anything tying or directly tying you as an employee with Pherian. I mean [I have] . . . your testimony so I can use that in part. I just wish I had a little more.

The trial court then asked Mr. Lannon about his work duties and whether he received directives from Mr. Marshall, to which Mr. Lannon responded that he received messages from Mr. Marshall directing him as to what he needed to focus on work-wise.

Discussing the screenshot of the November 8, 2023 text message, Mr. Lannon explained that this constituted his first demand to Pherian to be paid. Mr.

5

Lannon testified that he sent the text message to Mr. Marshall, who was one of the owners of Pherian. According to Mr. Lannon, at the time he sent the message, Pherian owed him three paychecks but "[t]his was right before the fourth payroll that was . . . missed." Counsel for Mr. Lannon then explained to the trial court that he sent a demand letter to Pherian on June 3, 2024, which Pherian received on June 4, 2024. Counsel contended that Mr. Lannon demonstrated that Pherian was in bad faith because his testimony established his wages were due and owing; his demand for payment was made on June 3, 2024; and Pherian did not pay within the time specified under the wage payment act—15 days. Accordingly, counsel for Mr. Lannon requested that he be awarded his back wages plus penalty wages for Pherian's bad faith.

At the close of the hearing, the trial court noted Mr. Lannon's Petition was before the court on a summary proceeding under the Louisiana Wage Payment Act ("LWPA"). The trial court then orally ruled that Mr. Lannon had met his burden of proof to show his entitlement to wages in the amount of $30,769.23 for the time period of September - October 2023.

### Judgment

On July 26, 2024, the trial court issued its judgment, which stated:

This matter came for summary hearing on [the] 26th day of July 2024;

. . . .

**IT IS HEREBY ORDERED ADJUDGED AND DECREED** that judgment for the plaintiff is GRANTED, in the amount of $30,769.23 for past due wages [and] shall carry judicial interest until paid.

**IT IS FURTHER ORDERED** that the defendant is found in bad faith, and it is adjudged against the defendant in accordance with La. R.S. 23:632. The amount of the wage penalty shall be:

6

1. $33,333.33 if paid by August 3, 2024.

2. $41,666.66 if paid by August 18, 2024.

3. $49,999.99 if paid by September 3, 2024 and thereafter plus judicial interest until paid.

**IT IS FURTHER ORDERED** that a judgment for plaintiff is awarded for reasonable attorney fees of 35% to be added to the collected amount when paid and $527.50 of court costs.

Pherian's timely devolutive appeal followed.

## ASSIGNMENTS OF ERROR

In its brief to this Court, Pherian asserts seven assignments of error:

(1)    THE TRIAL COURT ERRED when it rendered its [j]udgment on July 26, 2024.

(2)    THE TRIAL COURT ERRED when it found that [Mr. Lannon] was an "employee" of Defendant/Appellant Pherian . . . and thus eligible for relief under the [LWPA] pursuant to La. R.S. 23:631, *et seq.*

(3)    THE TRIAL COURT ERRED when it found that [Mr. Lannon] met all of the requisite formalities to qualify for an award of a [d]efault [j]udgment under La. C.C.P. art. 1702, including, but not limited to, establishing a *prima facie* case with competent evidence.

(4)    THE TRIAL COURT ERRED when it granted [Mr. Lannon]'s [d]efault [j]udgment in the absence of evidence that [he] provided the requisite notice to [Pherian] of [his] intent to obtain a [d]efault [j]udgment as required by La. C.C.P. art. 1702 (A).

(5)    THE TRIAL COURT ERRED when it allowed [Mr. Lannon] to offer, intro[duce], and file into evidence Exhibits A-H. . . .

(6)    THE TRIAL COURT ERRED when it found [Pherian] was in bad faith pursuant to La. R.S. 23:632 (B), giving rise to the award of penalty wages.

(7)    THE TRIAL COURT ERRED when it awarded [Mr. Lannon] reasonable attorney fees pursuant to La. R. S. 23:632 (C).

We note, however, that Pherian did not brief all seven of its assignments of error.

7

**DISCUSSION**

Based on our review of the record and Pherian's brief, we have determined that all issues can be resolved in the following three sections: 1) whether the trial court's judgment was improper because Mr. Lannon did not provide Pherian with prior notice that he intended to obtain a default judgment; 2) if not, whether Mr. Lannon established that he was entitled to past due wages from Pherian under the LWPA; and 3) whether Mr. Lannon was entitled to bad faith penalties and attorney fees as awarded by the trial court.[7]

### Whether the Trial Court's Judgment was Improper Because Mr. Lannon Did Not Provide Pherian with Notice

One of the issues that Pherian actually briefed was that the trial court's grant of Mr. Lannon's request for a default judgment was improper because Mr. Lannon did not provide Pherian with prior notice that he intended to obtain a default judgment. This section of Pherian's brief relates to its fourth assignment of error, wherein it contends the trial court erred by granting Mr. Lannon a "[d]efault [j]udgment in the absence of evidence that [he] provided the requisite notice to [Pherian] of [his] intent to obtain a [d]efault [j]udgment as required by La. C.C.P. art. 1702 (A)." Specifically, Pherian contends, "the [Louisiana] [L]egislature has eliminated the more burdensome process of first confirming a preliminary default

---

[7] Though Pherian did not brief all seven of its assignments of error, we have nonetheless exercised our discretion and decided to address all of Pherian's assignments of error within our three sections of discussion. Rule 2-12.4(B)(4) of the Uniform Rules of the Courts of Appeal states, "All assignments of error and issues for review shall be briefed. The court *may* deem as abandoned any assignment of error or issue for review which has not been briefed." (Emphasis added.) In recently discussing this Rule, this Court stated, "a cardinal rule of statutory interpretation [is] that the word 'may' is permissive." *Mendoza v. ACE Prop. & Cas. Ins. Co.*, 2024-0604, p. 25 (La. App. 4 Cir. 5/27/25), ___ So.3d ___, ___, 2025 WL 1502349, at *12 (quoting *Benjamin Pri-Tal v. Progressive Prop. Ins. Co.*, 2024-0531, p. 8 (La. App. 4 Cir. 5/14/25), ___ So.3d ___, ___, 2025 WL 1414743, at *4). The use of the permissive word "may" in Rule 2-12.4(B)(4) means that this Court has discretion in deciding whether to consider an issue abandoned. *Id.* at p. 26, ___ So.3d at ___, 2025 WL 1502349, at *12.

as required by former [La. C.C.P.] art. 1702, but new and revised La. C.C.P. art. [1702] still requires that some notice of plaintiffs [sic] intent to obtain a default be given to defendant, or defendant's legal counsel, whichever the case may be." As the following analysis will demonstrate, we can also resolve Pherian's third assignment of error in this same section. Therein, Pherian asserts the trial court erred in finding Mr. Lannon "met all of the requisite formalities to qualify for an award of a [d]efault [j]udgment under La. C.C.P. art. 1702, including, but not limited to, establishing a *prima facie* case with competent evidence." We address these contentions related to the default judgment procedure first because, if the contention that notice was required but not given is meritorious, then Pherian's remaining arguments could be pretermitted.

As Pherian correctly notes, the default judgment procedure requires the plaintiff to provide the defendant with notice in certain situations. *Sarasota, CCM, Inc. v. Supreme Quality Transp., LLC*, 2023-0658, p. 6 (La. App. 4 Cir. 3/6/24), 385 So.3d 307, 312 (summarizing that "La. C.C.P. art. 1702(A) only requires that notice be sent when the defendant has made an appearance, the defendant contacted the plaintiff or plaintiff's counsel in writing, or in delictual actions where the first two did not apply").[8] Pherian is also correct that to obtain a default judgment, a plaintiff must establish a *prima facie* case that he is entitled to same. *See* La. C.C.P. art. 1702(A)(1) (providing that "[i]f a defendant in the principal or incidental demand fails to answer or file other pleadings within the time prescribed by law or by the court, and the plaintiff establishes a prima facie case by competent and admissible evidence that is admitted on the record, a default judgment in favor

---

[8] In *Sarasota, CCM, Inc.*, this Court interpreted a prior version of La. C.C.P. art. 1702(A), which was—in all relevant respects—like the present version of La. C.C.P. art. 1702(A).

9

of the plaintiff may be rendered . . . ."). However, Pherian's arguments about the default judgment procedure are misguided.

"Summary proceedings are those which are conducted with rapidity, within the delays allowed by the court, and without citation and the observance of all the formalities required in ordinary proceedings." La. C.C.P. art. 2591. In terms of their applicability, "[g]enerally, summary proceedings are allowed in instances where the issue to be resolved is narrow and the need for a rapid adjudication is great." *Rhodes Steel Bldgs., Inc. v. Walker Constr. Co.*, 35,917, 35,918, pp. 11-12 (La. App. 2 Cir. 4/3/02), 813 So.2d 1171, 1179 (citing *Clay v. Clay*, 389 So.2d 31, 35 (La. 1979)). Louisiana Code of Civil Procedure Article 2592 is titled "Use of summary proceedings." It provides, in pertinent part, that "[s]ummary proceedings may be used for trial or disposition of . . . [a]ll . . . matters in which the law permits summary proceedings to be used." La. C.C.P. art. 2592(13). The LWPA is codified at La. R.S. 23:631, et seq. Louisiana Revised Statutes 23:631(B) states that an "employee shall have the right to file an action to enforce . . . a wage claim and proceed pursuant to [La. C.C.P. art.] 2592," i.e., the summary proceeding code article. *See also Dillon v. Toys R Us–Del. Corp.*, 2016-0983, p. 2 (La. App. 4 Cir. 5/31/17), 221 So.3d 876, 878 n.2 (wherein this Court noted, "a wage claim . . . is subject to summary proceeding" (citing La. R.S. 23:631(B))). As the Louisiana Second Circuit Court of Appeal has explained, "[t]he [code] articles relating to default judgments are inapplicable to summary proceedings. They apply only to ordinary proceedings." *Succession of Barron*, 345 So.2d 995, 997 (La. App. 2d Cir. 1977).

As stated previously, Mr. Lannon filed his Petition pursuant to the LWPA and, by the terms of his Petition, sought a summary proceeding, which the LWPA

expressly allows as delineated in the prior paragraph. In orally ruling in Mr. Lannon's favor at the close of the July 26, 2024 hearing, the trial court noted that Mr. Lannon's Petition was "before the court . . . on a summary proceeding under [the LWPA]." Moreover, at the outset, the July 26, 2024 judgment stated that "[t]his matter came for summary hearing on 26th day of July 2024." Thus, Mr. Lannon did not obtain a default judgment. Rather, he obtained the judgment pursuant to a summary proceeding. Accordingly, Pherian's arguments in its third and fourth assignments of error about Mr. Lannon's failure to comply with the default judgment procedure lack merit because that procedure was inapplicable to the matter *sub judice*.

## Whether Mr. Lannon Established that He was Entitled to Past Due Wages under the LWPA

This section will address Pherian's second and fifth assignments of error, wherein Pherian contends, respectively, that the trial court erred in finding Mr. Lannon was an employee of Pherian under the LWPA and further contended that the trial court erred in admitting Mr. Lannon's exhibits into evidence. Pherian asserts in its brief that the LWPA was inapplicable as Mr. Lannon failed to prove he was an employee of Pherian, contending:

> At no place in the pleadings or at the hearing . . . did [Mr.] Lannon introduce credible evidence that he was an employee of Pherian . . . . In fact, to the contrary, a good number of [Mr.] Lannon's own exhibits admitted into the record refute his claim that he was a Pherian employee and instead illustrate that at all times, [he] was instead an employee of Kymberly.

Regarding Mr. Lannon's exhibits, Pherian further asserts that because Mr. "Lannon failed to put any affidavits or otherwise authenticate any of the evidence that he relied on to obtain the default judgment, under the circumstance [sic], his evidence should be stricken from the record, providing a fatal blow to the default judgment

obtained, further giving rise to the [t]rial [c]ourt's reversible error." As explained in the prior section, Pherian's contention that Mr. Lannon obtained a default judgment is misguided, but we nonetheless consider whether there is merit to Pherian's assertion that the trial court erred in admitting Mr. Lannon's exhibits into the record.

### Admission of Mr. Lannon's Exhibits into Evidence

We begin with Pherian's contention regarding the trial court's admission of Mr. Lannon's exhibits into evidence. We do so because resolution of this issue will inform what exhibits the trial court should or should not have considered and what exhibits this Court should or should not consider in reviewing the trial court's judgment. Louisiana Code of Civil Procedure Article 1635 provides:

> Formal exceptions to rulings or orders of the court are unnecessary. For all purposes it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.[9]

In interpreting La. C.C.P. art. 1635, this Court has held that if a party did not object to the admissibility of evidence at trial, then the party "is precluded from raising this issue on appeal." *McDonnell v. Nestle Beverage Co.*, 1997-2029, p. 4 (La. App. 4 Cir. 4/22/98), 714 So.2d 757, 759 (first citing La. C.C.P. art. 1635; then citing *Austin v. Pascarelli*, 612 So.2d 201, 208 (La. App. 4th Cir. 1992); and then citing *Am. Mfrs. Mut. Ins. Co. v. Gen. Motors Corp.*, 582 So.2d 934, 940 (La. App. 2d Cir.1991)). As previously noted, Pherian was not present at the summary hearing and thus did not lodge any objections when the trial court admitted Mr.

---

9 Though La. C.C.P. art. 1635 is in the section of the Code of Civil Procedure concerning ordinary proceedings, La. C.C.P. art. 2596 provides that "[t]he rules governing ordinary proceedings are applicable to summary proceedings, except as otherwise provided by law."

Lannon's exhibits into evidence. However, the affidavit of long arm service in the record establishes Pherian received notice (on July 3, 2024, via service of Mr. Lannon's Petition on its registered agent) that the trial court scheduled the summary hearing in this matter for July 26, 2024. Therefore, while we acknowledge that La. C.C.P. art. 1635 provides that the absence of an objection does not prejudice a party if the party had *no* opportunity to object when the trial court made the ruling or order, we find this part of the Article inapplicable to the matter *sub judice*. Pherian had notice of the hearing and had the opportunity to object to the admissibility of Mr. Lannon's exhibits by attending the hearing and lodging contemporaneous objections to their admission into evidence; yet Pherian chose not to attend the hearing. Accordingly, Pherian is precluded from raising the issue of the admissibility of Mr. Lannon's exhibits on appeal.

### *Principles and Standard of Review Applicable to LWPA Proceedings*

Next, we will discuss the pertinent principles applicable to the LWPA procedure, as well as the standard of review applied by the appellate courts in reviewing a trial court's findings of fact in an LWPA case. As explained by this Court, "[t]he purpose of the LWPA is to compel an employer to pay the employee promptly after the employment is terminated." *Gallo v. Greenpath Int'l, Inc.*, 2021-0313, p. 9 (La. App. 4 Cir. 12/16/21), 334 So.3d 399, 407 (citing *Steak v. Hat World, Inc.*, 2015-1108, p. 5 (La. App. 4 Cir. 5/4/16), 191 So.3d 712, 715). More particularly, the LWPA "impose[s] a duty on an employer to pay an employee within" a certain period of time "following [the employee's] discharge or resignation[,] and [it] impose[s] penalties and attorney[] fees on those [employers] who do not pay in the manner so directed." *Knapp v. The Mgmt. Co.*, 476 So.2d 567, 569 (La. App. 3d Cir. 1985). Specifically, the LWPA provides:

A. (1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

(2) Payment shall be made at the place and in the manner which has been customary during the employment . . . .

La. R.S. 23:631(A).

In terms of employment relationships, a professional employer organization ("PEO") is a company that provides payroll processing services to another company. *See Domino v. Folger Coffee Co.*, 2009-1278, p. 5 (La. App. 4 Cir. 2/10/10), 32 So.3d 955, 958. For purposes of the LWPA, in a situation involving a PEO, the PEO is a co-employer with the other company. *West v. Bruner Health Grp., Inc.*, 2003-152, p. 15 (La. App. 3 Cir. 10/29/03), 866 So.2d 260, 270 (holding the PEO was a co-employer of the plaintiff pursuant to La. R.S. 23:631(A)(1)(b)). Thus, both the PEO and the other company owe the employee his salary and are solidarily liable to him in that regard. *Id.* The method in which the PEO and the other company "chose to divide payroll responsibilities in fulfilling their obligation to [the employee] simply created a separate obligation vis-à-vis each other but did not eviscerate their coextensive obligation to [the employee]." *Id.* In such a situation, as stated in La. C.C. art. 1800, "A failure to perform a solidary obligation through the fault of one obligor renders all the

obligors solidarily liable for the resulting damages. In that case, the obligors not at fault have their remedy against the obligor at fault."

When reviewing a trial court's judgment in a claim brought under the LWPA, the appellate court considers whether the trial court committed manifest error in its factual determinations. *Caldwell v. La. Energy Sols., LLC*, 2021-0667, pp. 8-9 (La. App. 4 Cir. 4/20/22), 338 So.3d 117, 123 (citations omitted). In its review, the appellate court "accord[s] great deference to findings of fact based on the credibility of witnesses" because the appellate court rules "'without the benefit of the [d]istrict [c]ourt's appraisal of the credibility of the versions' of fact presented." *Id.* (second and third alterations in original). As this court further explained in *Gallo*,

> the manifest error-clearly wrong standard demands great deference to the trier of fact's findings when findings are based on the credibility of witness[es]. *Johnson* [*v. Orleans Par. Sch. Bd.*], [20]14-0277, p. 8 [(La. App. 4 Cir. 4/26/17)], 219 So.3d [452,] 461 (quotations omitted). "[O]nly the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Id.* "Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness." *Id.* "[W]here such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." *Id.* [at] p. 8, 219 So.3d at 461-62.

2021-0313, p. 17, 334 So.3d at 411 (sixth and seventh alterations in original).

The manifest-error/clearly wrong standard of review also specifically applies in determining whether a plaintiff in an unpaid wages case was an employee of the defendant so as to invoke the LWPA. As explained by the Louisiana First Circuit Court of Appeal, whether the plaintiff qualifies as an employee under the LWPA "is a factual determination that must be decided on a case-by-case basis, and this

15

determination is subject to the manifest error standard of review." *Hulbert v. Democratic State Cent. Comm. of La.*, 2010-1910, p. 4 (La. App. 1 Cir. 6/10/11), 68 So.3d 667, 670 (citing *Jeansonne v. Schmolke*, 2009-1467, 1468, 2010-0437, p. 5 (La. App. 4 Cir. 5/19/10), 40 So.3d 347, 354).[10] The plaintiff bears the burden of proving that he or she was an employee of the defendant-employer. *Id.* (citing *Hillman v. Comm-Care, Inc.*, 2001-1140, p. 9 (La. 1/15/02), 805 So.2d 1157, 1163). *See also Jeansonne*, 2009-1467, 1468, 2010-0437, p. 6, 40 So.3d at 355 (holding "the burden of proof is on the party seeking to establish an employer-employee relationship" (citing *Hillman*, 2001-1140, p. 9, 805 So.2d at 1163)).

*Analysis*

Regarding the applicability of the LWPA, Mr. Lannon testified that he was an employee of Pherian, which owed him money totaling over $30,769.23 in pre-tax wages for work he performed for the company and for which he did not receive the salary owed to him in September and October 2023. When the trial court further questioned Mr. Lannon about his employment relationship with Pherian, Mr. Lannon testified that Mr. Marshall, one of the co-owners of Pherian, sent him messages with directives about his work. Mr. Lannon also explained that he had a written employment agreement with Pherian, though he could not produce same. Mr. Lannon further established that he made a demand for payment on Pherian by placing into evidence the June 3, 2024 letter sent by his attorney, and with the affidavit of mailing thereto attached. The record contains no response to Mr. Lannon's demand letter or evidence that Pherian paid him. In terms of Kymberly Group's role in his employment, Mr. Lannon clarified that Pherian simply used

---

[10] We note that much of the LWPA jurisprudence concerning whether the plaintiff was an employee of the defendant involves the distinction between an employee versus an independent contractor.

Kymberly Group as a payroll and workers' compensation service. As stated previously, an appellate court should accord deference when the trial court finds a witness to be credible because the trial court had the opportunity to observe the witness and variations in his or her demeanor and tone of voice. *Gallo*, 2021-0313, p. 17, 334 So.3d at 411. Here, Mr. Lannon's testimony was not so internally inconsistent or implausible on its face that a reasonable fact finder would not credit his story. Moreover, Mr. Lannon's exhibits support his testimony. In particular, Ms. Morales' email stated that Mr. Lannon's work was performed for Pherian even though Kymberly Group processed his payroll. Mr. Marshall's email—from a Pherian email address—was titled "Employment Info," and listed Mr. Lannon's salary and bonus.

We also address Pherian's contention that Mr. Lannon failed to establish that he was an employee of Pherian rather than Kymberly Group. As Mr. Lannon testified, Kymberly Group performed payroll services for Pherian and thus constituted a PEO. *See Domino*, 2009-1278, p. 5, 32 So.3d at 958. Ms. Morales' email also stated that Kymberly Group was a PEO. As the PEO for Pherian, Kymberly Group was a co-employer of Mr. Lannon for purposes of the LWPA. *West*, 2003-152, p. 15, 866 So.2d at 270. That is, Pherian and Kymberly Group co-employed Mr. Lannon, such that both owed him his full salary and were solidarily liable to him in that regard. *Id.* The fact that Kymberly Group processed Pherian's payroll for Mr. Lannon did not render Kymberly Group his sole employer and exclusively responsible for payment of his wages, thereby relieving Pherian of its obligation to timely pay him. Instead, that payroll service relationship merely created a separate obligation between Pherian and Kymberly Group: assuming arguendo that the non-payment of Mr. Lannon's wages was Kymberly Group's

17

fault, then Pherian had recourse against Kymberly Group, not an excuse to withhold Mr. Lannon's wages.[11] Therefore, there is merit to Pherian's contention that the record establishes that Kymberly Group employed Mr. Lannon for purposes of the LWPA. However, this does not change the outcome. Kymberly Group and Pherian were co-employers of Mr. Lannon under the LWPA and solidary obligors which both had an obligation to Mr. Lannon in terms of the timely payment of his wages.

In sum, we conclude the trial court did not manifestly err in finding Mr. Lannon was an employee of Pherian and that Mr. Lannon was entitled to $30,769.23 in unpaid (pre-tax) wages.

## Whether Mr. Lannon Was Entitled to Bad Faith Penalties and Attorney Fees

Finally, we consider the trial court's award of bad faith penalties and attorney fees. This section will cover Pherian's sixth and seventh assignments of error, wherein Pherian contended, respectively, that the trial court erred in finding Pherian in bad faith and awarding penalty wages and further contended the trial court erred in awarding attorney fees.

### Penalty Wages

Beginning with the award of bad faith penalties, La. R.S. 23:632 provides for the assessment of penalties against an employer for failure to comply with the provisions of La. R.S. 23:631 pertaining to payment of wages due at the time of termination of employment. It states, in pertinent part:

---

[11] An example of the non-payment being attributable to Kymberly Group would be if Pherian had deposited and submitted to Kymberly Group the money due to Mr. Lannon yet Kymberly Group did not deposit the money into Mr. Lannon's bank account as usual. This example is just included to better understand the situation: the record does not indicate that the non-payment was Kymberly Group's fault nor does Pherian allege this.

A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.

B. When the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.

La. R.S. 23:632. "Penalty wages" under La. R.S. 23:632 "are not to be absolutely imposed when the facts indicate that there is an equitable defense"; yet "[i]t is only a good faith, non-arbitrary defense to liability for unpaid wages which will permit the courts to excuse the employer from the imposition of penalty wages." *Barrilleaux v. Franklin Found. Hosp.*, 1996-0343, p. 17 (La. App. 1 Cir. 11/8/96), 683 So.2d 348, 360 (citations omitted). Though equitable defenses are available, if "an employer is arbitrary, sets out procedural pitfalls for the employee, or is merely negligent in failing to pay past due wages, penalty wages will be assessed." *Scarbrough v. Lynmar Holdings, LLC*, 2021-1566, p. 4 (La. App. 1 Cir. 8/31/22), 349 So.3d 34, 37 (citing *Berard v. L-3 Commc'ns Vertex Aerospace, LLC*, 2009-1202, p. 14 (La. App. 1 Cir. 2/12/10), 35 So.3d 334, 345). As the Louisiana First Circuit Court of Appeal has explained, "[e]ven good faith reliance on an attorney's advice may not amount to an equitable defense." *Berard*, 2009-1202, p. 14, 35 So.3d at 345 (citing *Magee v. Engineered Mech. Servs., Inc.*, 415 So.2d 277, 280 (La. App. 1st Cir. 1982)). As this Court has held, "[a] trial court's determination of whether an employer is arbitrary or in bad faith for purposes of

imposing penalty wages is a question of fact and is, therefore, subject to the manifest error standard of review." *Reaver v. Degas House, L.L.C.*, 2022-0464, p. 8 (La. App. 4 Cir. 3/13/23), 359 So.3d 570, 576 (quoting *Steak*, 2015-1108, p. 7, 191 So.3d at 716).

This Court has also held that in order to recover penalty wages under La. R.S. 23:632, the employee "must establish: '(1) that wages were due and owing; (2) that demand for payment was made where the employee was customarily paid; and (3) that the employer did not pay upon demand.'" *Caldwell*, 2021-0667, pp. 9-10, 338 So.3d at 124 (quoting *Moore v. Centralized Mgmt. Servs., LLC*, 2021-0021, p. 7 (La. App. 4 Cir. 8/4/21), 324 So.3d 704, 709). However, in discussing the burden of proof regarding penalty wages in a claim brought under the LWPA, the United States Court of Appeals for the Fifth Circuit has explained that although there is support in the jurisprudence for imposing the burden of proof on the plaintiff, there is also support in the jurisprudence that the employer must prove its equitable defense. *Batiansila v. Advanced Cardiovascular Sys., Inc.*, 952 F.2d 893, 896 (5th Cir. 1992). That court reasoned:

> Thus, the Louisiana Supreme Court cases hold only that courts are *permitted* to excuse the employer from the imposition of penalty wages when a good faith, non-arbitrary defense to liability is shown to exist. This does not mean that the employee must show bad faith. To so hold would turn this equitable exception on its head. There are no Louisiana Supreme Court cases even implying that the employee must prove bad faith in order to receive the penalty wages. We find that the burden of proof is on the defendant to show that it has an equitable defense.

*Id.*, 952 F.2d at 897 (footnote omitted). In describing an example of an equitable defense for non-payment of an employee's wages in *Batiansila*, the United States Court of Appeals for the Fifth Circuit summarized the case of *Deardorf v. Hunter*, 160 La. 213, 106 So. 831 (1926), as follows:

In that case, the trial court had refused to award the penalty wages. The employer had sent the payroll to another employee, Spears, who had used the money for other purposes. The employer did not know that the employees had not been paid. Once the employer learned of the non-payment, he deposited the wages, plus interest and court costs with the court. The trial court concluded that awarding the penalty in these circumstances would be inequitable. The question for the [c]ourt was whether the Act required the imposition of the penalty. In upholding the trial court, the Louisiana Supreme Court stated that "[t]he language of the [predecessor to La. R.S. 23:632] is not so peremptory as to forbid an equitable defense against the penalty".

*Id.*

As discussed previously, the trial court found that Mr. Lannon was an employee of Pherian and was due unpaid wages which Pherian did not pay upon his demand. We have already found the trial court did not manifestly err in arriving at that conclusion, thereby satisfying the first and third factors delineated by this Court in *Reaver*. In terms of the second factor listed by this Court in *Reaver*, Mr. Lannon made a demand for payment with Pherian, first in his informal demand via text message to Mr. Marshall in November 2023 and then in his formal demand letter in June 2024 sent to Pherian via its registered agent. The record does not demonstrate that Mr. Lannon made a demand for payment with Kymberly Group, from whom he was customarily paid. Because Mr. Lannon was customarily paid by Kymberly Group, not Pherian, arguably he did not satisfy the second factor for entitlement to penalty wages.

Nonetheless, we find the trial court did not manifestly err in awarding penalty wages and affirm the trial court's decision on the basis that "only a good faith, non-arbitrary defense to liability for unpaid wages . . . excuse[s] the employer from the imposition of penalty wages." *Barrilleaux*, 1996-0343, p. 17, 683 So.2d at 360 (citations omitted). Having reviewed the record in its entirety, we find Pherian has not submitted an equitable defense so as to establish a good faith,

non-arbitrary defense to liability so as to excuse it from penalty wages. That is, we follow the holding from the United States Court of Appeal for the Fifth Circuit in *Batiansila* that the employer (here, Pherian) had to prove its equitable defense in order to avoid penalty wages.

Other than listing an assignment of error that the trial court erred in awarding penalty wages, Pherian did not even specifically address this issue in its brief to this Court. Arguably, Pherian's contention that Mr. Lannon did not produce credible evidence that he was an employee of Pherian so as to invoke the LWPA might be considered a defense for non-payment. Of note, however, in that section of its brief, Pherian does not deny that Mr. Lannon performed work for the company. Rather, Pherian's brief states, in pertinent part, that "when Pherian decided to stop using the leased services of [Mr.] Lannon, Pherian had to make a formal request, using Kymberly [Group] forms, to sever the services," thereby acknowledging that Mr. Lannon did in fact perform services for Pherian. Pherian's contention in its brief that Mr. Lannon did not produce credible evidence that he was an employee of Pherian more so focuses on the payment process, stating "[t]here is nothing in the record to reflect that Pherian made any payment to [Mr.] Lannon" and referencing the direct deposit exhibits and Mr. Lannon's W-2 form. As outlined previously, however, the fact that Mr. Lannon performed work for Pherian yet received his payment from Kymberly Group merely means this was a co-employer situation. Under a co-employer situation, the jurisprudence provides that co-employers are solidary obligors under the LWPA and each has a coextensive obligation to the employee in terms of the payment of wages. Thus, Pherian's assertion that Mr. Lannon received his payment from Kymberly Group does not constitute a good faith, non-arbitrary defense to liability for Mr. Lannon's

22

unpaid wages. Unlike in *Deardorf*—as summarized in *Batiansila*—Pherian does not contend, for example, that it was unaware Mr. Lannon had not been paid or that it provided Kymberly Group with Mr. Lannon's payroll for the months in question yet Kymberly Group failed to pass along his wages. We thus affirm the award of penalty wages on this basis.

**Attorney Fees**

Turning to the award of attorney fees, La. R.S. 23:632(C) provides:

Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

In interpreting the above- provision, the Louisiana First Circuit Court of Appeal has explained:

Unlike the award of penalty wages, the award of reasonable attorney fees under La. R.S. 23:632 is mandatory when an employee brings a "well-founded" suit for unpaid wages, irrespective of any equitable defenses that may have been raised. Suits in which the recovery of unpaid wages is granted are considered "well-founded." *Cleary v. LEC Unwired, L.L.C.*, 2000-2532, pp. 9-10 (La. App. 1[] Cir. 12/28/01), 804 So.2d 916, 923.

*Berard*, 2009-1202, p. 14, 35 So.3d at 345. As similarly explained by this Court, an award of attorney fees is "mandatory in the event of a 'well-founded' suit," which occurs when "the employee recovers contested wages." *Caldwell*, 2021-0667, p. 11, 338 So.3d at 124 (first citing La. R.S. 23:632; and then citing *McNamara v. Greater New Orleans Biosciences Econ. Dev. Dist.*, 2015-0748, p. 9 (La. App. 4 Cir. 2/3/16), 187 So.3d 59, 64-65). In the matter *sub judice*, the trial court granted Mr. Lannon's Petition to recover his contested wages, and we have determined in this Opinion that the trial court did not manifestly err in so ruling. Thus, in light of

the mandatory language in La. R.S. 23:632(C)[12] and the foregoing jurisprudence, we also affirm the trial court's award of attorney fees.

Pherian's first assignment of error was that the trial court erred when it rendered its judgment on July 26, 2024. The above three sections of discussion and analysis resolved this assignment of error by arriving at the conclusion to affirm the trial court's judgment. Thus, we have now addressed all of Pherian's assignments of error and issues listed in its brief.

## DECREE

For the foregoing reasons, we affirm the trial court's July 26, 2024 judgment, which granted Mr. Lannon's Petition for Unpaid Wages; ruled Pherian was not in good faith in its dispute with Mr. Lannon; and ordered Pherian to pay wage penalties and attorney fees.

**AFFIRMED**

---

[12] Louisiana Revised Statutes 23:632(C) uses the word "shall" with regard to the award of attorney fees. As stated in La. R.S. 1:3, "[t]he word 'shall' is mandatory."